241742 A&N Electric Cooperative v. Dietzel Enterprises, Inc. It looks to me like Mr. Wright is up first. Yes, good afternoon, Your Honor. Proceed whenever you're ready. Thank you, Your Honor. Good afternoon. May it please the Court. Gibson Wright and McCandless Holton here in Richmond for A&N Electric Cooperative. This matter involves A&N's claim for indemnity for a wrongful death claim under 59.1-414B of the Virginia Overhead High Voltage Line Safety Act, an important prong of the Act's enforcement provision. Mr. Wright, before – it's just been so distracting to me when I've been reading all of the documents in this case. Can you please tell me – this is literally to satisfy my curiosity – what happened to MRA and the underlying suit? Like, no one tells me what happened, and it's just – I'm literally curious, and until I know that, it's going to be very hard for me to focus on anything else. So they got a defense verdict. Okay. And we settled right before – after we did jury instructions and then before closing argument. Thank you. And as pled, we're a 12B6 posture. As pled, the settlement was reasonable in light of the verdict we face and legal rulings that have gone up to that point. So is the only issue now basically dueling insurance policies and who ultimately pays? So it's not an insurance policy. I think it's very important, actually, because this is a statutory claim. This is under the Virginia Overhead High Voltage Line Safety Act's indemnity provision, which says that the person responsible for the work, which is Dietzel and Allstate – Dietzel being the employer of Mr. Fink, who was unfortunately electrocuted and died, and then Allstate being the general contractor on the job working on the communications tower – they didn't follow the provisions of the OHVLSA in this case. I understand, but the decedent's estate has already been paid. Yes. The question is who's responsible for that payment?  And our position is that that claim that we paid under the Act, the person responsible for the work that doesn't follow the OHVLSA and it violates 59.1-408, which is the working within 10 feet without giving notice and then following the provisions of the OHVLSA, has to pay that claim. And this is purely a question of Virginia statutory construction, is that right? Yes. And it's a question that's never been reached by a Virginia court? Yes. So we have no Virginia precedent to follow?  So my question is why wouldn't we then just simply certify this question to the Virginia Supreme Court and have them tell us what their statute says? If the court's inclined to do that, I think that is at the court's discretion. I mean, I obviously think it's clear for us, but if the court's inclined to do that, I don't really – I will say that it's – there's no case on point under Virginia law. I do – we are the only people – But who's the reason that we're in – sorry, this is a question I often want to know in diversity cases. So this is a question of Virginia state law. The Virginia courts could have just answered this question. It's your client who chose federal court, right? Yes. They didn't drag you into federal court? No. We sued under – So you picked federal court, you lost, and now you're telling us that the district court got Virginia law wrong? Yes. Okay. So, I mean, there are reasons for suing a federal court in terms of quickness of decision. I mean, there was – not to get in too far, but there are a lot of rulings and non-rulings in the state court action which led to – Oh, I used to practice in Virginia state court. I'm aware of some of the challenges of doing that. So, yes, and so this – and this went all the way to juries, often happens in state court, and so we think it's a pretty distinct issue under the OHVLSA, and it's an important part of the OHVLSA that when you, as a person responsible for the work, don't follow it, you've got to pay the consequences. And they have acting forces out in the front end and the back end, and we were seeking to – you know, seeking to recover under that, and that's why we filed in federal court. We thought we'd get a quick answer on it. And the court – the answer that the court gave us was that the exemption under 59.1-413 applied, and it does not. And I think there's – I'm sorry, Judge Berner, I mean, the question – if the court's inclined to certify this to the Supreme Court of Virginia, then, I mean, that's the court's prerogative. I don't really have a position on that other than I think that, as for the reason we stated in the briefs, it's clear that the exemption – that the district court got it wrong in interpreting the exemption over broadly. And if I could explain that. It just seems to me that reasonable minds can clearly differ if a very smart district court judge got it one way and you think it goes another way, then it's reasonable minds, I suppose, could look at it differently. And here this is a fairly unique situation where we have an issue of state law never before resolved. The question answered would resolve the entire case, and we wouldn't be wading into construction of statutes of the states. I'd agree, Your Honor. And I'd also further state this goes to my argument when I later talk about the alternate grounds that the court could affirm if it decided not to certify this question. There are certainly other states that have ruled upon similar OHVLSA-type acts. I mean, this is a – Is this like a UCC type or like – why do all states have these statutes that all address the same thing in remarkably similar language? Where do these statutes come from? Well, because working over at Holtz's Alliance is dangerous. Oh, no, I understand why. But it seems – it's striking when you see a whole bunch of states have laws that are written very similarly. It makes me think that they might have a common source. Well – Like the UCC. I mean, I know this isn't the UCC, but like the UCC. Well, I know that there's an interplay between OSHA regulations and OHVLSA in terms of the 10-foot rule. And, of course, you've got people like Dietzel who are from Nebraska coming to Acomac in the eastern shore of Virginia. These are certain basic rules of construction. When you have a project and you're working your overhead high-voltage lines, I think there's a benefit for states adopting similar rules. I mean, I would say that there's a policy inclination that the legislature has shown in enacting these statutes that they want to protect people and overhead high-voltage line operators and owners from incidental contact with lines of subsequent claims. So I think that's why a lot of different jurisdictions have adopted this act. But to the point on – I was going to make in terms of other jurisdictions, I couldn't find a case in other jurisdictions addressing the specific issue of an exemption like this. And the exemption language does differ a little bit in other states, but the case law that we've cited in other jurisdictions is much more on point for the workers' compensation exclusivity provision. What about the Maine statute in the case out of Maine, the Central Maine Power Company case? Yes. So the exemption was not an issue in that case, and so I think that the point in that case in terms of – and this is jumping to the – I think the general theme that this is not – this is a claim for equitable indemnity because there's not a contract, and therefore you've got to be found liable first, and otherwise it's totally essentially unfair that we're holding the bag for this. And I think the Central Maine Power Company case involved somebody working on a sailboat, and the mast of the boat hit a line. It was allegedly lower than it should have been, so there was some – you could have knocked the power company in that situation. And there was a suit where the power company ensued the suit for indemnity, and the indemnity statute in Maine allowed for indemnity for all claims. And the Maine Supreme Court said, look, it says all claims, and we're reading this. You've got to pay for all claims. It doesn't matter if the power company was allegedly partly at fault. And, in fact, they raised a Maine comparative – or comparative negligence statute talking about it. And they said, no, look, the statute is clear that the person responsible for the work, when they violate the provisions of the OHVLSA, they've got to pay for all that. And there's an important policy provision behind that, which I do want to emphasize to the court. This is what the court said in the Central Maine Power Company case. It said the entirety of the statutory scheme comprising the act, which is Maine's version of the OHVLSA, places a particular burden on employers of individuals who work near overhead high-voltage lines to comply with the act's provisions or face penalties. And it goes on to say, because the potential for grave and even fatal injury is high when employees work near power lines, the legislator's enactment serves to motivate employers arranging for on-site work to make every required measure to avoid injury. So that's what we've got here on the front and on the back. And, unfortunately, none of the OHVLSA was followed here. As a play-up, ANN never got notice, which, of course, triggers a process by which the person responsible for the work talks to the owner or operator of the line, ANN, to figure out temporary safety arrangements that then they can agree, and the person responsible for the work has to ensure those temporary safety arrangements are in place before they work. And then, if subsequently somebody's injured, if they don't follow, so that act is on the front end, requires people to follow the OHVLSA. On the back end, if you don't do that, you're going to get sued for everything. And there's nothing unfair about that. It's important. The legislator wants to encourage people responsible for the work to notify power companies and then to go through this process. And, of course, people responsible for the work are the people who are going to know whether or not somebody's working near the lines. So this probably piggybacks on Judge Berner's point that maybe this statute's, at minimum, really ambiguous, because can I take you to the indemnification point? Yes. Does this statute require a settlement to be reasonable to get indemnification? So, I would say… This feels like a yes or no question. Do you think this statute… No. I say it says all claims. And I think to their point, they have a point where they say, well, how can you require us to identify for a claim that you shouldn't be liable for because of 59.1… But does that really seem right? Do you imagine that the other party could make a deliberately ridiculous hypothetical? A party that has a 100% valid merits defense settles for $1 billion. You really think they can get indemnification for that? So, Your Honor, I pled in the complaint that… I know that's not your case. I'm asking you, though, but do you think the statute would say that the party who settles a frivolous claim for $1 billion could get indemnification? I think if you read in contractual indemnification law in terms of where you've got somebody that's contractually obligated to identify somebody else, if they make a payment that is unreasonable, I think there's certain case law that if you tender the defense and they refuse to participate, you've got certain additional protections. That's some stuff in the record that wasn't really, you know, that's kind of not really here yet in terms of…  We broadly pled that we told Allstate and Dietzel you're going to be on the hook for this. I'm still not really sure what your answer to my question is. So, I think it would be really dependent. You can't… I think my answer to your question is you can't 100 percent just voluntarily pay something, and I'm using that. It's different than the voluntary payment document, which deals with an equitable thing outside of contractual indemnity. But you can't just voluntarily give it up without any sort of reason. We've pled here, though, that it's a reasonable settlement. And you would propose… No, again, the Virginia Supreme Court can say this statute means anything in the world. The Virginia Supreme Court wants to say that. You would have us say that that limitation is where in the statute? So, I think… What statutory language imposes that limitation? It says all claims, so I don't know necessarily if it's there. And I think the court… I would tell the court that the reason it's not there is the statute is more concerned on the front and the back end, making sure that people comply with the OHVLSA. And I think there's also a component, too, of protecting power companies. If they have no idea somebody's working near a power line, the person responsible for the work has to notify them, and they have to go through this process. So when you don't do that, you've got to just play the claim. And I think, too, it's a part… Claim, which I think is a different word than they use in the main case, it's not a liability. It's not taken to judgment. It's any claim resulting from work that's in violation of the Act. And so, and that's… I think they're saying all claims just because they want to make it so clear that you've got to follow it, and when you don't, you're totally on the hook. And I think that's a totally legitimate policy reason for the state to do that. Just, I guess, brief points on the statutory interpretation point for the court to decide it and not send it to the Supreme Court. So the court, the district court below, essentially said that in the exemption… The exemption says this. It says overhead, it doesn't… The Act doesn't apply to overhead electrical or communication circuits or conductors and their supporting structures and associated equipment of those conductors or circuits of four different things. And it lists four different subsets, including rail transportation systems, electrical generating systems, systems, communication systems, or any other publicly or privately owned system. What the district court did is it said that it was going to refuse to read it narrowly and not read or… They were going to read or in disjunctive and essentially read this thing backwards and forwards and say because or is in there, if you're ever working on a communication system, a rail transportation system, or any other public system, as long as you're the owner, this doesn't apply. And that, I mean, that exception swallows the rule and it doesn't make sense. I think you're putting so much interest, so much emphasis on or that you're forgetting. You're totally writing out the word of. This is talking about communication circuits or conductors of certain things. And, of course, you'd have surplusage if you're saying that the tower is a communication circuit. By the court's reading, you'd be saying a communication circuit of a communication system. That's two things of the same thing. It doesn't make sense. And, of course, we can't – I'm sorry if I finished this thought. Absolutely. So, you know, the broader point here, this statute is all about overhead high-voltage line safety. And in order to exempt, it's got to apply in the first place. You can't be an exemption without exempting. And so this whole thing is talking about when you're working with lines, you know, you've got to be working with lines to which the other actors apply. To me, the clearest reading of this, which makes the most sense, is they're talking about overhead lines, circuits, or conductors, which the Act defines a line to be a circuit, that are up in the air, that are part of some system that the owner is working on that otherwise the Act would apply to. If you've got a – it says railroad system. If you have a railroad that's running an electric cable, if you're working on the cable, that's probably an overhead high-voltage line, but that's part of that system. That doesn't apply. The line he hit here had nothing to do with what he was working on. Or at least as pled in the complaint, the line he hit here had nothing to do with it. As pled in the complaint, absolutely. Yeah, it wasn't serving it. It wasn't of it. It was totally – it was incidental contact. He bumped into it while working on something else. That's precisely what the OHVLSA is supposed to protect against. Great. Thank you, Your Honor. Thank you, Mr. Wright. I understand the appellees are splitting their time and that I believe Ms. Palmer is going first, or are we – Actually, Mr. Wood is going first. I'm sorry, my mistake. Please go ahead. Good afternoon, and may it please the Court. My name is Lee Hoyle on behalf of Appellee Dietzel. I will be speaking for eight minutes on the exemption of Section 413 as well as the viability of a claim for indemnity under Section 414 where the estate had no claim against Dietzel due to the operation of Virginia's workers' compensation law. Could you address before you begin our question about certification to the Virginia Supreme Court? Your Honor, I don't believe that certification is necessary in this case under the exemption because the exemption is clear in our view that the work going on was, in fact, exempt and under the plain language of the statute, and therefore certification is unnecessary because the Virginia Supreme Court and this Court have said that they're going to consult dictionary definitions to determine the plain and ordinary meaning, which is what the district court did, and under that plain and ordinary meaning, the work was exempt. This Court should affirm the judgment of dismissal based on the exemption in Section 413 for the simple reason that the phrase electrical or communications conductors or – sorry, circuits or conductors includes far more equipment, far more materials than electrical or communications lines as my colleague has proposed. The Overhead High-Voltage Line Safety Act applies not to work on lines but to any work in the vicinity of lines, and then the legislature has determined to take that broad structure and exempt from it work, specific types of work, the construction, reconstruction, operation, and maintenance of four types of, among other things, communications conductors and their supporting structures and their associated equipment. The words – and I focus on the words communication conductors because I think it's the very clearest application of the exemption in this case. And those two words are not defined by the statute, so the district court did what the Supreme Court of Virginia and this court have said it should and consulted a general purpose dictionary, a dictionary that the Supreme Court of Virginia has used as recently as two years ago, and read what the definitions of communication and conductor. Under those definitions, a communications conductor at a minimum includes any object or material that is capable of transmitting information or energy, in this case the tower that was being worked on at the time, certainly meets that definition. It is part of a communications system. It broadcasts radio waves, which is a form of information or energy. So it's either itself a communications conductor or at a minimum it is a supporting structure of a communications conductor or its associated equipment. Now whether it's a conductor, structure, or equipment is irrelevant because the exemption applies to all three. Under the plain language of the statute, the exemption applies. Doesn't that make this exemption extremely broad, essentially swallowing up the whole rule? No, Your Honor, because the statutory structure as a whole applies to all work in the vicinity of overhead voltage power lines. The exemption then applies to very specific types of equipment owned by the owner of the system itself. You have the requirement that it be an electrical or communications conductor or circuit. So it's a specific type of those two types of equipment. And the work must be part of a system, one of four types of systems, and the work must be done on behalf of the owner of the system. So it is very focused on exempting work done by the owners, either by or on behalf of the owners of electrical or communication systems. And that limitation makes sense because the owners of these types of systems may very well have a significant amount of equipment that is in the vicinity of overhead high voltage safety lines. And the legislature would have good reason to want to make sure that the owners of these types of systems are able to operate their systems, they're able to maintain their systems, to be able to go into areas that may otherwise fall within the very broad definitions of the OHVLSA without having to provide notice to the operator, without having to negotiate with the operator, without having to come up with a remediation plan and then, subject to certain exemptions, pay for it. You're imposing costs and delays on the owners or people who want to do work. And the legislature has decided we want the owners of these specific types of systems who may have a significant portion of their operations near overhead high voltage safety lines, we want them to be exempt to make sure that they're able to do their work without unnecessary costs and delays. And that gets to a fundamental problem with ANN's argument. ANN's argument comes down to we believe that this should have been covered because we believe this accident should have been prevented. But that's a policy judgment. That is a policy judgment that the exemption shouldn't apply because a bad thing happened and we don't agree with where the Virginia legislature drew the lines. The Constitution doesn't vest this court with the prerogative to make that policy judgment. It is for the Virginia legislature. And the legislature spoke clearly when it exempted this type of work on this type of system. So part of the exception you're relying on is the language that says communication conductors. So you're saying this radio tower line is a communication conductor. Is that right?  I believe that the district court was correct when it ruled that it was a communication conductor. That may well be true, but doesn't the statute, like, doesn't, why doesn't overbroad modify everything that follows it and why isn't, at least based on the allegations here, that he wasn't working on overbroad? That argument, basically. Because the OHVLSA does not require that he be working on a line of any sort. It requires that he be working in the vicinity of. So you could be doing any sort of work. You can be doing painting work, pre-trimming work, construction work. You can just, any sort of activity that brings a person or a piece of equipment in the vicinity of an overhead high-voltage power line is within the scope of the act itself. It is specific types of work on specific types of facilities that is subject to the exemption. And the exemption applies only to work on communications, conductors, or circuits, or electrical, done by or on behalf of the owner of that sort of system. And that's why it's not overbroad, because you get types of systems and the specific owners who are subject to the exemption. So you don't have pre-trimmers going out who, you don't have all sort, any sort of work that could potentially involve a communication system isn't necessarily exempt because if it's not done by or on behalf of the owner of the system, which we have here in the form of the county. The profit definition, I state in my brief, violates multiple canons of statutory construction, including the simple fact that the Virginia legislature chose to use the word line a dozen times in the statute, but then chose not to use the word line in the exemption. It used the broader term circuits or conductors, implying that it didn't mean to limit the exemption to lines, and in fact interpreting both these two words to mean lines would render one or both of them to be meaningless. And I see my time has expired. Thank you very much. So we will now hear from Ms. Palmer. Good afternoon. May it please the Court. I'm Julie Palmer, and I represent the Appley Allstate Tower Incorporated. We certainly adopt Dietzel's arguments with regard to the district court's interpretation, correct interpretation of the exemption found in 59.1-413. But should this court disagree with the district court, there is an equally legitimate alternate ground upon which this court should affirm the court's dismissal of ANN's claim for indemnity, and that is because the facts pled by ANN do not state a plausible claim for indemnity under Virginia law. Virginia law recognizes two types of indemnification. One is contractual, which all the parties concede there was no contract between either Allstate or Dietzel and ANN providing for indemnification. The other option, then, under Virginia law is equitable indemnification. Wait, but, okay, so this maybe is just another argument in favor of Judge Berner's certification suggestion. How do I know that that doctrine applies to a statute that by its own terms provides for indemnification? Well, there are multiple reasons within the language of the statute and within well-recognized statutory construction principles which lead to that conclusion. But first, one would be the absence of any recognition in any other statute or case law that the parties have been able to find of any such claim. All you're really doing now is convincing me this statute is potentially quite ambiguous and uncertain indeed. Well, let me turn to the language of the statute itself then, Your Honor. Under the rules of statutory construction, courts presume that the legislature knows and has in mind the common law in its enactment of the statute. So quite to the contrary, ANN argued that essentially this statute creates a contract between the parties. That is not the case and there is no principle of Virginia law. In the contract, I'm just looking at 59.1414B, any person, that sounds like any person, responsible for the work who violates this statute shall indemnify. It doesn't say any person who would otherwise be required to indemnify under principles of equitable indemnification. It says any person who does X shall indemnify. Correct, Your Honor. It provides for a right of indemnification. No, no, no. It doesn't say right of indemnification. It creates a duty of indemnification. It says that you must do this. But along the principle of construction that the legislature is presumed to know and have in mind the common law, the vehicle for obtaining that indemnification is through the concept of common law indemnification, which again is the only other recognized law. And maybe the Virginia Supreme Court would say that. I mean, maybe, but that isn't what the statute says, right? Well, I believe it does say that because not only, because the statute does specifically reference common law principles. In 414C, the statute states, except as in A, so not as except as in B, but except as in A, nothing in this chapter shall be construed or applied so as to alter the duty or degree of care applicable to owners or operators of overhead high voltage lines with respect to damage to property, personal injury, or death. And with that language, then, the court, the legislature, as is always the case, is bringing the common law unless it explicitly— But that makes it worse. I think that makes it worse, if not better, because the neighboring provision of the statute, as you quite correctly point out, expressly references the common law. And so at least a plausible negative inference is that when B doesn't mention the common law, that means B doesn't bring the common law along with it. Because why do you specify that the common law comes along under C and then not say that under B? And again, the Virginia Supreme Court can consider Virginia law however they see best, but I actually think on the face of the statute that you seem wrong to me about this. I understand, Your Honor. I would just offer that in order to abrogate the common law, the principles of statutory construction under Virginia law are that that must be an express abrogation. And there is no express abrogation in subsection B that, hey, this doesn't— And so because of that, you cannot make that negative inference. In fact, it's prohibited under the rules of statutory construction. And so the opposite is true, that the Court must use the common law principles of indemnification in its interpretation of 414B. A and N's interpretation of the statute, in addition to being contrary to the plain language of the statute, is also contrary to the express purpose as stated in 59.1-406, which addresses the scope of the Act. The scope of the Act or the purpose of the Act is, quote, to promote the safety and protection of persons engaged in work or activity in the vicinity of overhead high-voltage lines. The purpose is not to insulate the owners of those lines from their own negligence, which is how A and N interprets this statute in broadly interpreting the indemnification provision. In fact, A and N's interpretation would be contrary to the express purpose as it would disincentivize owners of high-voltage lines from doing their part and fulfilling their obligations under the statute to promote the safety of the workers. Yeah, but that seems really hard because it seems that the obvious purpose of this statute is not to incentivize the owners of lines. It's to incentivize people who work around lines. And your argument, again, this is on the margins, but on this point, your argument gives people who work around lines less incentive and their argument gives people who work around lines more incentive. And it seems, if we're going to talk about the purpose of the statute, I would say that this statute overall seems to be more concerned about people who work around lines than about the lines. I agree that the purpose is for the people who work around lines. I also agree that the purpose of promoting the safety of those individuals is equally directed to persons responsible for the work, all state and diesel, and to the owners of the lines. Because one way you could really just easily interpret B and C together or hack this whole statute together is, look, what C says is, baseline, any obligation the line owner already has, I want to be as clear as I possibly can, that's what C says, you don't get out of any legal obligations you had before this statute. We are not reducing liability for people who own lines. But everything else about this statute is expanding obligations to people who work around lines. But the way that has to play out in order for there to be a viable claim of indemnification under the statute is that ANN needed to exclude the possibility that it was held liable for its own negligence. Because, as Your Honor pointed out, Part C explicitly says, we're not letting you off the hook for any other duties that you may violate, which may lead to injury or death to a person in the vicinity of high-voltage lines. And that's why— Well, but actually C doesn't say it doesn't limit their liability. It says it doesn't limit their duty or their degree of care. But then other provisions of the statute do in fact shift liability around in ways that would be different, right? I mean, in fact, that's kind of what B seems like— I mean, literally what B seems designed to do is shift liability around. In certain circumstances. Sure. But the statute as a whole, 59.1.414, through the language in C, which specifically emphasizes that common law duties and duties of care are still in existence, we also have the provision of 414A, which specifically it identifies two circumstances in which ANN can still be liable. It says ANN or an owner of a line may not—shall not be liable except for if they are not given notice and if they fail to do their part under the Act. And then you've got Part B, the language in the actual indemnification subsection, which states that it provides indemnity only where the injury, quote, So all three of those separate but complementary and comprehensive textual cues point to there still being a world in which ANN can be held liable. And because of that, and because the legislature is presumed to know the common law and unless it expressly abrogates it, then it remains part of the scheme, then you have to look to equitable—the principles of equitable indemnification to determine whether ANN has pled a viable claim. And a prerequisite to recovery based on equitable indemnification principles is an initial determination that the negligence of another person caused the damage. The obligation that ANN took it upon itself voluntarily to discharge may or may not have even existed in the first place because had it gone to verdict, it may have been the recipient of a defense verdict, as was MRA. It may have had its 414A defense heard and decided in its favor by the jury. Number one, was there even a liability obligation that needed to be paid? But number two, if it had gone to verdict and there was a verdict against ANN, what was the basis for that? Was it because, as would be the only vehicle toward indemnification, they were being held liable because of the failings of Allstate or Dietzel, or was it because of these separate degrees or duties of care that the statute explicitly says are still in existence? What ANN did here was settle with the estate for $800,000 prior to that prerequisite determination that it had liability, which therefore means under the law, as a matter of law, that it cannot seek indemnity for that payment. And to emphasize the point, as Your Honor has already alluded to, in the underlying state court proceedings, the estate alleged multiple other common law duties on the part of ANN, which it allegedly breached. It had experts, standard of care, common law duties, theories against ANN. If ANN was liable to the estate for its own negligence, under the parts of the statute that we've discussed, there would be no indemnity obligation. And so by choosing to settle with the estate before that determination of liability, ANN foreclosed its opportunity to seek indemnity under the statute or under the common law. I can't emphasize enough that throughout the litigation, ANN's position was that it could not be held liable to the estate for the exact reasons that it's coming before this Court to say that it's entitled to indemnification, and that was under 414A, that its position all along was that it was not given proper notice of the work, therefore it could not be liable because other people didn't follow the act. It made a motion for summary judgment on that issue. It made a motion to strike and a renewed motion to strike all at trial on this point, all of which were denied. It then chose to settle, which suggests that it knew it could be held liable for its own negligence, and so why not capture the risk at that time? But Allstate and Detail are not bound by ANN's trial decision to do that. The only way that Allstate or Detail can be liable for indemnification under this statute is if ANN is obligated to pay a debt for which they are not independently responsible, and neither of those things is true here. They were, number one, not obligated. They chose to pay the debt. It was a voluntary payment. It wasn't even a debt. How is it not a derivative claim of the estate, ANN's indemnity claim? With regard to the application of the workers' comp exclusivity provision? No, no, no, no, no. Based on the argument, I think one of the arguments they have is that this is a derivative claim of? Of the estate. Of the estate. Well, if it were, Your Honor, it is foreclosed because Allstate settled separately with the estate and was released. And so there can be no other claim. The release language foreclosed any other claim on behalf of the estate, which if this were to fall in that category, it would also have already been released by the estate or any of its agents or assignees. Judge Benjamin, do you have any other questions? No. Judge Berner? Thank you very much. Thank you, Your Honor. Mr. Wright, you have some rebuttal time. Thank you. So if I may, Judge Benjamin, your question on how is it not a derivative claim, I think in some of the other OHVLSA case law that we've cited, particularly the Flint case, when people have said, oh, the workers' comp exclusivity provision bars it, the courts have said, well, no, the statute, it's akin, the statute of rights indemnification is akin to contractual indemnification. It's not derivative. And so I think that's the point here. The statute itself specifically says that they shall pay for all claims. And, of course, on the workers' comp issue, just while I'm on it, the statute 59.1-414D, it says except for the rights provided to the owner or operator of the overhead high voltage line in subsection B, that's under which we're suing for indemnity. Nothing contained in this chapter shall be construed to alter, amend, restrict, or limit the exclusivity provision of Virginia workers' comp act. So I don't see how clear you could be, how more clear you could be that Virginia legislators specifically said that except for the indemnity right under which we're suing, this is not going to alter the workers' comp exclusivity provision. Well, we're suing under B, so it clearly does. To the point that my colleague was going backwards to what Ms. Palmer was saying about we paid for something we couldn't be liable for, I think it's important to note that how important the OHVLSA is and how much it wants to stress and enforce its provisions by putting the onus on people responsible for the work to follow its provisions before and on the back end. So 59.1-414A says the owner or operator of overhead high voltage lines shall not be liable for damage or loss to any person or property caused by work within 10 feet of overhead high voltage lines unless notice has been given under the statute and they subsequently negotiate temporary safety arrangements. Then B says any person responsible for the work who violates the requirements of 59.1-408, which is working within 10 feet of overhead high voltage lines and not following the OHVLSA's notification provisions, shall not be liable. This is belt and suspenders. They're working together. They're trying to say no ifs, ands, or buts. Person responsible for the work, you've got to give us notice. We're not on the hook unless you do give us that notice and we arrange temporary safety arrangements and then we as the owner or operator somehow provides them. We as the owner or operator violate those safety provisions. And then on the back end, just to make clear, you're going to identify us for all claims when you do work within 10 feet of overhead high voltage lines and don't follow the OHVLSA. It is a belt and suspenders approach to making sure the person is responsible for the work. Follow the OHVLSA. And the onus is on them, the people responsible for the work, and it makes sense because people responsible for the work are the people who are going to know when they're working near overhead high voltage lines. I think my colleague, Ms. Palmer, Allstate, was talking about it's unfair to make, to put this onus on the person responsible for the work and not the owner or operator of the line. I mean, going to the Maine case, the Maine Supreme Court said, look, it's perfectly reasonable to put the notice obligation under the act on the person responsible for the work and make them responsible for these claims when you don't follow it rather than a negligent line owner because they cannot be physically present where all lines exist and for whom fiscal responsibility could result in passing costs along to the rate payers. I mean, this is a policy decision. All of this, this act envisions a whole process from start to finish and then enforces it with this identification provision that we're trying to sue under now to say that persons responsible for the work are responsible for notifying us and starting this process and ensuring it happens. And none of that happened here as we pled and for that reason we're suing for indemnity. To the argument about contract versus equitable, I think, again, going backwards, this is when you're talking about derivative claim, go back to the Flint case in Georgia when they're saying, look, this is akin to contractual indemnity, which doesn't rely on the underlying person being liable. So sometimes you get people suing for equitable indemnity or contribution to the joint tortfeasor has to be also liable to the joint tortfeasor who's an employer. What about her argument that if it's equitable, I mean, there is no determination of liability because you all chose to settle? So I think that's two arguments she's got. She's saying it's equitable and it has to be. Well, yeah, so you're saying the argument that it's equitable and there's no finding of liability on our part and, therefore, excuse me, there's no finding of liability on all states' part. And that's I think that the point that this is not equitable is statutory akin to contractual indemnity. We're relying on the statute. And then, again, I'd go to the main case where they were suing the power company and the power company was allegedly partially at fault and they were raising that thing. And they're saying, look, it says all claims. This statute says you've got to pay for all claims. It doesn't matter our degree of fault. And, again, it's not equitable indemnity. It's statutory indemnity. So that's the point on that. But if there's no finding of liability, it goes to Judge Hyten's question about there being hypothetically no limit on the amount of the settlement, which seems like it could incentivize quite difficult results. So, and, again, this wasn't quite developed, but I would say, Judge Berner, that you have this in context of when you have contractual indemnity. I've had suits like this where somebody else is contractually obligated to identify us. We tender it and they don't take up the defense and they don't pay for it. No, but under the indemnification provisions in a contract, there's generally an obligation to notify that the claim exists. Here there's no obligation to notify. And so, hypothetically, you could have a situation where the claim is settled for a billion dollars without that being the actual value of the claim and then the indemnification obligation kicking in. Hypothetically, yes. I mean, I think the Act is very strong. You pay all claims. I think that's not what we've pled here. I think we've pled. We did give notice. We've pled. It's reasonable. But, I mean, again, I think the Act is very strong and it's strong on purpose that you pay for all claims and you don't follow these procedures. So you think the Act reads in a notice requirement that doesn't exist here? Well, let's not miss the forest for the trees. This whole thing gets started by a statutory notice under the OHLSA in terms of working within 10 feet of the line. You're talking about notice of a potential claim. Yes. So I don't think it reads. I think the statute says what it says, and it doesn't say anything in here about when you've got a claim to give the other person notice of the. . . I agree. It doesn't say anything about that. That's why it's really not analogous to a contract. Well, the reason I was. . . Again, it doesn't say that. Just other courts when they've dealt with the workers' compensation bar issue where when you either have contribution or equitable indemnification, the other person has to be found at fault or at least partially at fault for something that you've got to pay for. And when that other person is an employer, in the exclusivity provision of the workers' comp act, bars a claim against them, they can't be found at fault. And they get around that by saying this is akin, statutory indemnity, it's akin to contractual indemnity. It doesn't have that problem. I think perhaps in a similar way, you could say this is akin to contractual indemnity. You deal with those situations where in a suit for contractual indemnity, other people say that you paid too much, the settlement wasn't reasonable, and it wasn't really developed in the briefing. And I think some of what happened in the case, the court below is not quite in our pleading in terms of where it's 12B6 posture. You'd go through some of that case law. There is case law out there when you have contractual identification suits about whether or not the settlement they paid was reasonable, whether or not you gave them an opportunity to take off a tender of the defense and defend it themselves, or they were stopped from saying it's unreasonable because they didn't defend it themselves, all that stuff. I don't think we're there right now, but it says what it says. There's no notice provision, and it says all claims. So, I mean, I think that's just the way it is, and it's strong. And it's important because it tries to ensure that people follow the act. So, thank you. And for that reason, I think the court should reverse the district court. Thank you, counsel. I'd like to thank all three counsel for their arguments and for your patience with the delay caused by our en banc. We will adjourn court for the day and come down and greet counsel. The court is adjourned until tomorrow morning. God save the United States and the Commonwealth.
judges: Toby J. Heytens, DeAndrea Gist Benjamin, Nicole G. Berner